UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TANYA F. KELLY,                              )<br>                                              )<br>          Plaintiff,                         )<br>    vs.                                       )          1:04-cv-1927-SEB-VSS<br>                                              )<br>JO ANNE B. BARNHART, Commissioner             )<br> of the Social Security Administration,       )<br>                                              )<br>          Defendant.                          ) | |

**Entry Discussing Complaint for Judicial Review**

Tanya F. Kelly ("Kelly") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded** for further proceedings.

### I. BACKGROUND

Kelly applied for DIB on May 31, 2002, alleging an onset date of December 4, 2001. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on November 20, 2003. Kelly was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Kelly and a vocational expert testified.

The ALJ denied Kelly's application on January 15, 2004. On September 30, 2004, the Appeals Council denied Kelly's request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over Kelly's complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Kelly met the disability insured status requirements of the Act at all times relevant to the ALJ's decision; (2) Kelly had not engaged in substantial gainful activity at any time relevant to the decision; (3) the medical evidence established that Kelly had "severe" impairments consisting of degenerative joint disease, degenerative disc disease, fibromyalgia, carpal tunnel syndrome, and obesity, but she had no "severe" psychological impairments; (4) Kelly did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4; (5) Kelly retained the residual functional capacity ("RFC") to perform light exertional work with the following restrictions and limitations: must be allowed to alternate into a sitting or standing position for periods totaling one or two minutes per hour; no more than occasional bending, squatting, or climbing of ramps and stairs; no kneeling, crawling, or climbing of ladders, ropes or scaffolds; avoid walking on uneven surfaces, work at unprotected heights, work around dangerous machinery, operating a motor vehicle, being around open flames and being around large bodies of water, and no rapid head or neck movements, repetitive forceful gripping or operation of vibrating tools; (6) Kelly's subjective complaints and allegations concerning the severity of her impairments were not reasonably consistent with the objective medical and other evidence of record; (7) Kelly was unable to perform her past relevant work as a licensed practical nurse; (8) Kelly was a younger individual and was now closely approaching advanced age, and had a high school education; (9) in view of Kelly's age and RFC, the issue of transferability of work skills was not material; (10) based on an exertional capacity for light work and Kelly's age, education and work experience, Medical-Vocational Rules 202.14 and 202.21 would direct a conclusion of "not disabled;" (11) although Kelly's restrictions and limitations did not allow her to perform the full range of light work, using Medical-Vocational Rules 202.14 and 202.21 as a framework for decision-making, there were a significant number of jobs in the State of Indiana which she could perform, including hand packing (2,000 jobs), general office clerk (3,000 jobs), inspector (4,000 jobs), and security guard (3,000 jobs); and (12) Kelly's capacity for light work had not been significantly compromised by exertional and nonexertional restrictions and limitations. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Kelly had not been disabled within the meaning of the Act at any time relevant to the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.    Analysis

The ALJ determined that Kelly had severe degenerative joint disease, degenerative disc disease, fibromyalgia, carpal tunnel syndrome, and obesity, but she could perform some light work with certain restrictions. Kelly argues that the ALJ's RFC determination is not supported by substantial evidence.  More specifically, Kelly contends that the ALJ improperly weighed the opinions of treating physicians, his credibility assessment was patently wrong, and he failed to obtain an expert medical opinion as to Listing equivalency.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford v.Apfel,* 227 F.3d 863, 870 (7th Cir.2000) (citing 20 C.F.R. § 404.1527(d)(2)).  If an ALJ decides to reject medical evidence offered by a treating physician, he must provide good reasons for his decision. *See Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992) ("The ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability.").

The ALJ acknowledged that treating physician Dr. Luros opined that Kelly was restricted to lifting five to ten pounds, had problems with hand weakness, and was not able to do repetitive motion. (R. at 25, 115).  The ALJ rejected this opinion because it was not supported by objective medical evidence. (R. at 25).  The ALJ did, however, agree that

3

Kelly should avoid "repetitive forceful gripping or operation of vibrating tools." (R. at 25-6). The ALJ noted that treating physician Dr. Cooney concluded that Kelly was unable to work due to back pain, and that Dr. Greenbaum concluded that Kelly was severely restricted. (R. at 26). The ALJ failed to give these opinions controlling weight because of the lack of objective medical evidence. *Id.*

Kelly contends that the lack of objective medical evidence is not a valid rationale to reject a treating physician's opinion in a fibromyalgia case. Indeed, the Seventh Circuit has emphasized that the symptoms of fibromyalgia are "entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir.1996). The Commissioner counters that Dr. Luros and Dr. Cooney based their opinions on Kelly's back pain rather than on her fibromyalgia, and that therefore, the lack of objective evidence rationale is not misplaced. The question as to whether the opinions of the treating physicians are supported by objective medical evidence, however, is not so easily avoided. A neurological consultative report of February 6, 2001, indicated that Kelly's widespread back pain, lower extremity and upper extremity pain and numbness "could be related to a fibromyalgia type pattern...." (R. at 226). Accordingly, Kelly's back pain is not necessarily separate and distinct from her fibromyalgia. To this extent, insistence on objective data is misplaced.

As far as whether Kelly's back pain is indicated by objective medical evidence, Dr. Luros performed a laminectomy for a ruptured disc in 1988, (R. at 248-50), and continued to treat Kelly for back pain through at least 2002. Dr. Luros indicated that Kelly's cervical spondylosis with stenosis limited Kelly to a five to ten pound weight restriction, and that her problems with weakness in her hands indicated that she was not able to do repetitive motion. (R. at 115, 117, 251). Dr. Luros' diagnoses are supported by several MRI's of Kelly's spine, showing mild to moderate spinal stenosis and foraminal narrowing at C5-6 due to disc bulge, and moderate spinal stenosis and narrowing at C6-7, disc bulge and probable disc herniation. (R. at 24,149, 199, 200, 202, 238, 315-16). The combination of Kelly's fibromyalgia and disc disease provide a verifiable explanation for her allegations of pain. In the face of the treating physician opinions, the ALJ may not properly substitute his own view that the diagnostic tests "failed to demonstrate any serious deficits which would account for the claimant's allegations of pain." (R. at 24). The ALJ's rejection of the treating source opinions for lack of objective evidence is not supported by substantial evidence.[1]

Kelly correctly points out that Dr. Luros opined that Kelly was unable to do "repetitive motion." (R. at 115). The ALJ "agreed" that Kelly should avoid "repetitive forceful gripping or operating of vibrating tools," but the ALJ does not explain how he arrived at this restriction based on Dr. Luros' report. (R. at 25-6). Whether a restriction on "repetitive motion," as opposed to "repetitive forceful gripping" would further narrow the job base is not known, but shall be made clear through vocational expert testimony on remand.

---

[1] The ALJ failed to mention the reports of treating physician. Dr. d'Ambrosio, who treated Kelly for carpal tunnel syndrome and fibromyalgia, however, Dr. d'Ambrosio did not provide an opinion of Kelly's specific restrictions, other than to opine on a form through which Kelly sought a disabled parking certification that she was severely restricted in mobility. (R. at 106-07, 266-67, 310-11, 309-322, 327).

4

Kelly further argues that the ALJ erred in evaluating her credibility. The ALJ stated that Kelly's "subjective complaints and allegations concerning the severity of her impairments are not reasonably consistent with the objective medical and other evidence of record." (R. at 24). The ALJ recited the appropriate rules and regulations to consider when evaluating a claimant's credibility. (R. at 24, citing 20 C.F.R. § 404.1529(c)(3); SSR 96-7p). The applicable criteria include: daily activities; the location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side-effects of medication; treatment, other than medication, for relief of pain; and the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p.

The ALJ acknowledged Kelly's allegations that she was unable to sit, stand or walk for any length of time due to pain, but found her less than credible because of the lack of objective evidence. (R. at 24). Contrary to this conclusion, as discussed above, the record does demonstrate that Kelly had medically determinable impairments which could reasonably be expected to produce her pain. *See* SSR 96-7p ("[S]ymptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone... ."). In addition, while discussing her credibility the ALJ failed to note Kelly's daily activities and her need to take frequent breaks when attempting to do household chores. (R. at 24, 347-50, 355). The ALJ noted that medications gave only temporary and limited relief, but failed to explain how that tended to lessen Kelly's credibility. (R. at 24).

The Commissioner's *post hoc* rationalizations concerning Kelly's credibility are not persuasive because the ALJ did not make such observations. "[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for [his] decision and confine [the court's] review to the reasons supplied by the ALJ." *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002).

The ALJ's conclusions concerning Kelly's allegations of severe pain and its effect on her ability to function are not supported by substantial evidence. In this regard, the ALJ failed in his obligation to "build an accurate and logical bridge from the evidence to [his] conclusions." *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 569 (7th Cir. 2003). Generally, an ALJ's credibility finding is entitled to great deference, however, if the rationale for the finding is not supported by the record, the court cannot affirm the credibility determination. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996). Because the ALJ's rationale for finding Kelly not fully credible is not supported by substantial evidence, the case must be remanded for further consideration.

Kelly's argument that the ALJ failed to obtain an updated medical opinion as to whether or not her impairments met or equaled a Listed Impairment, is not persuasive. Kelly does not indicate which, if any, Listing she met or equaled. The burden of proof through step four of the evaluation process is on Kelly. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). An applicant must satisfy all of the criteria in a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The Commissioner concedes, however, that the initial and reconsideration transmittal forms were not included in the record. Under these

5

circumstances, on remand, the record shall be updated to reflect that a medical source has at least reviewed the record and found that Kelly's impairments do not meet or equal a Listed physical impairment.

### III.  CONCLUSION

An ALJ's "decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).  For the reasons described, the ALJ's decision is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  01/18/2006

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana